Wanda D. CROOKER, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No. CIV. A. 98–0733–P–G.

United States District Court,
S.D. Alabama,
Southern Division.

March 13, 2000.

Gilbert B. Laden, Mobile, AL, for Plaintiff.

Patricia Nicole Beyer, U.S. Attorney's Office, Mobile, AL, for Defendant.

## ORDER REVERSING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

PITTMAN, Senior District Judge.

Presently pending before this court is plaintiff's Statement of Objection to the Magistrate Judge's Report and Recommendation made under 28 U.S.C. § 636(b)(1)(B), and dated January 25, 2000 (doc. 20). The Magistrate Judge recommends that the decision of the Commissioner of Social Security to deny plaintiff's claim for disability insurance and supplemental security income be affirmed (doc. 17).

Plaintiff raises three objections: 1) The Magistrate Judge erred in assigning weight to the opinion of William A. Crotwell, III, M.D., an examining physician, that plaintiff could do sedentary work; 2) the Magistrate Judge erred in evaluating the physical capacities evaluation completed by Dr. Crotwell with regard to stooping; and 3) the Magistrate Judge erred in evaluating plaintiff's need for frequent rests. This court writes to plaintiff's third objection.

■ In this Circuit, it is well established that

[i]n reviewing claims brought under the Social Security Act, [the court's] role is a limited one. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Secretary. Even if we find that the evidence preponderates against the Sec-

retary's decision, we must affirm if the decision is supported by substantial evidence. Yet, within this narrowly circumscribed role, we do not "act as automatons." We must scrutinize the record as a whole, to determine if the decision reached is reasonable, and supported by substantial evidence.

Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.

*Bloodsworth,* 703 F.2d at 1239 (internal citations omitted). This court finds that the Commissioner's decision is not supported by substantial evidence.

As noted by the Magistrate Judge, plaintiff suffers with a severe deformity of the left foot and left lower extremity. *See* document 17, p. 2, ¶ 1.

■ The ALJ found that plaintiff "is unable to perform her past relevant work as a cashier." (Tr. 21, Finding 7). With that finding, "the burden shifts to the [Commissioner] to prove that the claimant is capable, considering [her] age, education, and work experience, of engaging in any other kind of substantial gainful work which exists in the national economy." *Sryock v. Heckler,* 764 F.2d 834, 836 (11th Cir.1985).

The ALJ found that plaintiff

has the residual functional capacity to perform the physical exertion and non-exertional requirements of work except for work involving lifting more than ten pounds occasionally and five pounds frequently. She cannot use her hands in repetitive actions such as pushing and pulling of arm controls. She cannot use her feet in repetitive actions such as pushing and pulling of leg controls. She cannot bend, squat, crawl, or climb. She can reach occasionally. She is totally restricted from activities involving unprotected heights and being around moving machinery. She also has a moderate restriction involving driving automotive equipment.

(Tr. 21, Finding 5). The ALJ found that plaintiff is able to perform sedentary jobs which exist in significant numbers in the national and local economies. (Tr. 22, Finding 11). The ALJ noted "[c]onsidering these vocational factors and Hypothetical No. 1 submitted to the vocational expert [ ("VE") ] at the hearing [January 20, 1995,] I find that the claimant can perform jobs which exist in significant numbers in the national and local economies, such as: a radio dispatcher and as a surveillance system monitor. Hence, I find that the claimant is not disabled." (Tr. 20, ¶ 4).

In so doing, the ALJ assigned the examining physician, Dr. Crotwell's physical capacities evaluation ("PCE") "great weight as it is consistent with the other evidence of record." (Tr. 19, ¶ 1). The ALJ then concluded that "[t]he weight of the evidence shows that the claimant can perform sedentary work." *Id.* .

However, Dr. Crotwell's evaluation clearly reflects that plaintiff has the ability to sit for eight hours during an entire eight-hour day, one hour at a time; that plaintiff could stand one hour and walk one hour during an entire eight-hour day, but less than one hour for each posture at a time; and that plaintiff "could tolerate sedentary work *only* with frequent rests." (Tr. 213, emphasis added). During the hearing the ALJ and the VE discussed the meaning of Dr. Crotwell's usage of the phrase "frequent rests." (Tr. 84–86). The VE stated that she "would need a greater explanation from the doctor to know what he meant by frequent rest." (Tr. 85). The ALJ asked of the VE:

Q Well how many times a day... generally does... [a] radio dispatcher and surveillance system monitor permit breaks...?

A Depends on the individual employer. At least every 2 hours or so. Maybe 2 to 3 hours. Maybe a break, and then a lunch period and then another break before the 8 hour shift is over.

Q So 3 to 4 times out of the day maybe?

A Including the lunch.

Q Including the lunch break. In your view would that equate frequent... or do you need more than that?

A I really would need more than that, because its been my experience that some doctors frequent means a little bit different. To each individual one.

(Tr. 85).

Nevertheless, without further ado, the ALJ construed frequent to mean once an hour. The Magistrate Judge found this "reasonable" (doc. 17, p. 8, ¶ 5). This court does not in light of the evidence of record.

The transcript reflects:

Q So if I was to construe that word frequent to mean once an hour, she would need a break once an hour, would these jobs exist?

A When you're talking about a break, are you talking about a break to lay down or a break to just stand up and stretch?

Q Frequent rest meaning to spend 5 to 10 minutes every hour doing whatever she felt she need[ed] to do to make herself comfortable...

A I think it would depend on the individual employer. That's why I'm saying I don't know about the significant numbers, because if there's only one person there maybe at the time monitoring. It would just depend on the individual employer, possibly just to stand up and move around right there at the console would be okay, but if she had to leave and go somewhere I don't know that they would exist in significant numbers.

(Tr. 85–86). The VE's opinion regarding the availability of jobs is less than definitive.

Moreover, the form PCE completed by Dr. Crotwell clearly reflects "NOTE: In terms of an 8 hour workday,... 'Frequently,' [equals] 34% to 66%..." (Tr. 213). Dr. Crotwell added by separate letter that the PCE form "should indicate that she can sit for up to eight hours total during an eight hour day, with standing and walking for no more than a total of one hour during an eight hour day. She can perform sedentary work but should be allowed frequent rests due to her medical condition." (Tr. 214).

The ALJ's definition of "frequent rests," equates to "5 to 10 minutes every hour," in an eight-hour day. The ALJ's definition, at most, amounts to only 12.5% of an eight-hour day (10 min. × 8 hrs. = 80 min.) ÷ (640 min. or 8 hrs. = 12.5%), far less than 34% to 66%, indicated to equate with "frequent" as reflected on the PCE form completed by Dr. Crotwell which was accorded "great weight" by the ALJ.

On the face of the evidence, the ALJ's interpretation of "frequent rest" falls short of the limitation delineated by Dr. Crotwell as necessary for plaintiff to be able to tolerate sedentary work. The form filled out by Dr. Crotwell clearly defines "frequently" as "34% to 66%." Dr. Crotwell stated that plaintiff "could tolerate sedentary work only with frequent rests." (Tr. 213). The evidence clearly reflects that plaintiff can tolerate sedentary work only with frequent rests as outlined by Dr. Crotwell the examining physician. Therefore, this court finds that the Commissioner's conclusion that plaintiff can perform sedentary work and is not disabled is not supported by substantial evidence; and that the Commission has failed to carry his burden of proving that plaintiff is "capable... of engaging in... substantial gainful work which exists in the national economy." *Sryock*, 764 F.2d at 836.

Accordingly, it is ORDERED that this cause be and is hereby REVERSED and REMANDED to the Commissioner of Social Security for an award of benefits.

## *REPORT AND RECOMMENDATION*

GAME, United States Magistrate Judge.

The plaintiff in this action seeks judicial review of an adverse ruling denying her claim for disability insurance benefits and supplemental security income. Adminis-

trative hearings were conducted on July 13, 1994 and January 20, 1995, and the ALJ's decision was handed down on August 14, 1995. The Appeals Council denied review on May 13, 1998, and this action followed.

The action has been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was heard on November 29, 1999. Upon careful consideration of the administrative record and the parties' arguments as raised in their memoranda and at oral argument, the undersigned respectfully recommends that the decision of the Commissioner be affirmed.

## I. Issues on Appeal.

The plaintiff raises the following issues on appeal:

(1) whether the ALJ improperly discounted the plaintiff's complaints of pain;

(2) whether the ALJ should have found the plaintiff disabled without taking vocational testimony;

(3) whether the ALJ improperly relied on an incomplete hypothetical question.

## II. Background Facts.

The plaintiff has multiple deformities involving her left lower extremity. Her primary condition has been described as clubfoot, pes cavus, talipes equinovarus (or valgus) and equinus, (Tr. 190, 197, 199, 208), related conditions all of which involve a downward turning of the foot relative to the heel, so that weight bearing is primarily or exclusively on the forefoot. 4 Attorneys' Dictionary of Medicine (ADM) P–205; 5 *id.* at T–11, T–13.[1] The plaintiff also has a hammertoe of the left big toe and apparently other toes as well, (Tr. 197, 211–12), a condition that results in a claw-like effect. 3 ADM at H–17. Following several corrective surgeries in the 1970s,

(Tr. 134), the plaintiff's second through fourth toes are shortened and may be absent the proximal phalanges, the toe bones nearest the foot. (Tr. 193, 198, 208) Arthritic changes and spurring around the heel bone and elsewhere are also attributed to surgery. (Tr. 190, 193, 198, 208) Calluses are present on the bottom of the plaintiff's big toe and, along with a small skin graft, below the first and fourth metatarsal heads, (Tr. 197, 208), at the base of the toe. 4 ADM at M–163. The plaintiff's left foot is somewhat smaller than her right, and her left leg is atrophied and approximately three inches shorter than the right. (Tr. 197, 199, 208, 211)

The plaintiff worked in retail as a "third key" for all but a few months from December 1987 to May 1992. (Tr. 136, 210) This work required her to be on her feet the entire workday, to lift up to 25 pounds frequently and up to 50 pounds occasionally, and to bend and reach frequently. (Tr. 137)

In May and June 1992, the plaintiff was seen at the Oschner Clinic in New Orleans. (Tr. 190–98) Except for records of her surgeries in the 1970s, the only other medical records are consultative examinations by Dr. Wiggins, (Tr. 208), Dr. Lowery, (Tr. 199), and Dr. Crotwell. (Tr. 211–15)[2]

The ALJ found a severe impairment of pes cavus but also found that the plaintiff retains the residual functional capacity to perform a limited range of sedentary work and that she can perform the jobs of radio dispatcher and surveillance system monitor. (Tr. 21–22)

## III. Discussion.

### A. Pain.

The plaintiff testified that her foot continually throbs. It feels as if someone is

---

1. Her plantar flexion (downward turning) has been measured at 20% and her equinus at 5 degrees. (Tr., 190, 208)

2. Dr. Crotwell, an orthopedist, completed a physical capacities evaluation (PCE) in Sep-

tember 1994, which limited the plaintiff to one hour sitting in an eight-hour workday. (Tr. 215) Finding this PCE to be in error, Dr. Crotwell substituted a second PCE allowing the plaintiff to sit eight hours in an eight-hour workday. (Tr. 213–14)

holding fire under her foot or is hitting it with a hammer. (Tr. 55) The pain is at the site of a callus under her foot, (Tr.53), but sometimes extends to lower back pain. (Tr. 74) She cannot sit for long periods, but this is because her foot falls asleep rather than because of pain. (Tr. 48, 51, 62)

The plaintiff testified it is painful to put weight on her left foot because of the callus. The plaintiff has been fitted with a corrective shoe, but it is breaking down and is rubbing other parts of her foot. (Tr. 47, 54–55) She has no problems with her right foot other than trying to bear all her weight on it. (Tr. 54)

The plaintiff testified that standing also presents problems in maintaining her balance if her foot is asleep or if her knee pops, as it occasionally does. (Tr. 56–57) Standing also puts pressure on her foot that extends all the way to her lower back. (Tr. 87) If she stands while trying to awaken her foot, she feels pain in her lower back. (Tr. 75) Finally, the plaintiff testified that her left lower leg feels like a constant, cold bruise. (Tr. 56)

The ALJ found the plaintiff's complaints of pain and discomfort not fully credible. (Tr. 21) The plaintiff argues the ALJ failed to express legally adequate, factually supported reasons for discounting her subjective complaints, requiring they be deemed accepted as true. She also argues that other evidence establishes there is not substantial evidence on the record as a whole to justify discounting her complaints. (Statement of Issues 1–6)

Before subjective complaints such as pain can be considered, the plaintiff must: (1) produce evidence of the existence of an underlying medical condition; *and* (2)(a) produce objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (2)(b) show that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Edwards v. Sullivan,* 937 F.2d 580, 584 (11th Cir.1991). A decision that this "pain standard" is not met must be supported by substantial evidence. *Id.; McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir.1987).

If the pain standard is satisfied, the ALJ must consider the plaintiff's subjective complaints. *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.1992). The ALJ may reject the plaintiff's complaints as not creditable, but his or her decision to do so must be supported by substantial evidence. *Id.* In addition, the ALJ must explicitly set forth adequate reasons for rejecting such testimony. *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir.1991). Failure to do so results in the plaintiff's testimony being accepted as true as a matter of law. *Id.*

The ALJ identified at least the following reasons for discounting the plaintiff's complaints of pain at the sedentary level: (1) Dr. Crotwell, an examining physician, found her able to perform sedentary work despite these complaints; (2) the plaintiff takes no medications for her alleged pain; and (3) the objective clinical findings do not suggest she should experience disabling pain at the sedentary level. (Tr. 19–20) These reasons are legally adequate ones for discounting the plaintiff's complaints of pain and, as discussed below, they are supported by substantial evidence:

(1) The plaintiff fully related to Dr. Crotwell her complaints of pain and discomfort, (Tr. 87, 211), yet he opined that she can perform the requirements of sedentary work for a full eight-hour workday. (Tr. 213)

(2) The plaintiff alleged "constant" pain, (Tr. 55), yet she has never been prescribed any pain medication and does not even take over-the-counter medications for such pain. (Tr. 124, 133, 209) [3]

---

**3.** The plaintiff takes aspirin three or four times a day, but this is for headache pain, not for foot, leg or back pain. (Tr. 59)

(3) While the plaintiff's medical records reflect the existence of multiple lower extremity deformities, they do not suggest that these deformities should cause the plaintiff disabling pain, especially when she is not bearing weight by standing or walking on her left foot. Dr. Deeney considered an osteotomy "to release the weight bearing on the pressured areas," (Tr. 208), not to provide pain relief when sitting. Similarly, the corrective shoe for which he later opted was designed to "weight distribute her excessive forces," (Tr. 190), not to provide pain relief when sitting. The plaintiff admitted that circulation problems, not pain, limit her ability to sit. (Tr. 48, 51, 62)

Similarly, the medical records do not support the proposition that the plaintiff would experience disabling pain while bearing weight on her *right* foot. Because the vocational expert identified, and the ALJ found the plaintiff can perform, jobs that are "totally sedentary" and require no standing or walking, (Tr. 80–83), the only standing or walking necessary for these jobs is the "frequent rests" proposed by Dr. Crotwell. *See* Part III.C. Thus, the plaintiff can lean and stand on her right foot to revive circulation in the left foot without placing weight on it.[4]

The plaintiff next identifies evidence that she believes validates her complaints of pain: (1) she has consistently complained of pain; (2) although she does not use pain medication, she has employed other treatment methods, and surgery was ruled out due only to the risk she could lose her foot; (3) Dr. Deeney found her temporarily totally disabled for six months in 1992; and (4) Dr. Crotwell precluded her from bending or squatting. (Statement of Issues 2–5) Even if this evidence were accepted at face value, the ALJ's decision to discount her complaints of pain would be supported by substantial evidence on the record as a whole, including that discussed above. However, the plaintiff's evidence is suspect in at least the following respects:

(1) In fact, the plaintiff's complaints of pain have not been consistent. Most notably, the plaintiff testified to constant pain while sitting, (Tr. 55), yet her Disability Report asserts pain only upon standing or walking, and limits her sitting problems to poor circulation. (Tr. 132) Similarly, the plaintiff testified to pain in her leg and lower back, (Tr. 56, 74–75), but her Disability Report mentions no such pain.

(2) The plaintiff treats herself by elevating her foot routinely, hot soaking it several times daily and lying down periodically, (Tr. 46, 88), all of which constitutes conservative treatment. The plaintiff was fitted with a corrective shoe in October 1992, which the fitting podiatrist described as "conservative treatment." (Tr. 131, 190)

(3) Dr. Deeney simply completed a worker's compensation insurance form in September 1992 indicating the plaintiff could not return to her job as an assistant manager/clerk before being fitted with a corrective shoe. (Tr. 187) The plaintiff described this job as involving medium work. (Tr. 136–37) Dr. Deeney expressed no opinion on the plaintiff's ability to perform sedentary work and implied the corrective shoe would allow the plaintiff to return to her past medium work within a few months.

(4) Even assuming that Dr. Crotwell's prohibition on bending and squatting was attributable to pain as opposed to mechanical difficulties, Dr. Crotwell did not otherwise credit the plaintiff's complaints of pain and found her able to perform sedentary work as well as to stand and walk an hour each per eight-hour workday. (Tr. 213)

In summary, the ALJ expressed legally adequate reasons, supported by substantial evidence, for discounting the plaintiff's complaints of pain and, despite the evi-

4. While the plaintiff complained of back pain when standing, no underlying medical condition causing such pain was ever identified, nor did any medical source ever confirm or support its existence or severity.

dence cited by the plaintiff, there is substantial evidence on the record as a whole supporting the ALJ's decision to discount the plaintiff's complaints.

## B.   Use of Vocational Testimony.

Dr. Crotwell restricted the plaintiff to sedentary work with no bending and only occasional reaching.  (Tr. 213)  The ALJ accepted these restrictions.  (Tr. 21)  Relying on two Social Security Rulings, the plaintiff argues a finding of disability is "in order" or "justif[ied]" due to these restrictions.  (Statement of Issues 6–8)

For a plaintiff limited to sedentary work and with a complete inability to stoop,[5] "a finding that the individual is disabled would *usually* apply."  SSR 96–9p (emphasis added).  By its terms, SSR 96–9p does not mandate a finding of disability in this situation. On the contrary, it states that "[c]onsultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional [i.e., no] stooping." *Id.*[6]  The ALJ properly followed this procedure in presenting the plaintiff's inability to stoop in a hypothetical question to the vocational expert, (Tr. 80), who identified a significant number of jobs existing in the national economy that the plaintiff can perform despite this and the other restrictions found by the ALJ. SSR 96–9p requires no more.[7]

Similarly, SSR 85–15 states only that "[s]ignificant limitations of reaching ... may eliminate a large number of occupations a person could otherwise do."  Far from mandating a finding of disability, SSR 85–15 expressly states that "the assistance of a VS [vocational specialist] may be needed to determine the effects of the limitations." *Id.*

In summary, the ALJ was not required to find the plaintiff disabled based on her restrictions in stooping and reaching, and he properly relied on vocational testimony responsive to hypothetical questioning incorporating these restrictions.

## C.   Hypothetical Questioning.

Dr. Crotwell completed the only physical capacities evaluation (PCE) on the plaintiff.  The ALJ's first hypothetical question included all the limitations Dr. Crotwell identified and added a mild restriction on concentration due to depression and headaches.  (Tr. 80–82) The vocational expert testified that the occupations of radio dispatcher and surveillance system monitor would be available to such a person in significant numbers in the national economy.  (Tr. 82–83)

The ALJ modified this base hypothetical in several respects concerning the plaintiff's standing, walking and efforts to relieve her alleged pain.  The vocational expert testified that the jobs of radio dispatcher and surveillance system monitor *would* be available whether the plaintiff could stand and walk an hour each (as Dr. Crotwell found) or could do so much less or not at all, because these jobs are considered "totally sedentary."  (Tr. 80–83)

The vocational expert testified that these jobs *would not* be available if the plaintiff had to elevate her leg most of the day, take several foot baths, frequently leave the work area, or sit and stand at will.  (Tr. 80–81, 83–86) The vocational expert testified that these jobs *would* be available if the plaintiff needed to lie down periodically (apparently, during scheduled breaks) or to spend five to ten minutes an

---

5.   Stooping is a form of bending in which only the spine is bent.  SSR 85–15.  Dr. Crotwell's prohibition on bending will be construed, for present purposes, as encompassing stooping.

6.   This is but a particular application of SSR 96–9p's recognition that "the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability." *Id.*

7.   Elsewhere in her Statement of Issues, the plaintiff notes that SSR 96–9p also indicates that the inability to stand and walk for more than a few minutes a day would justify a finding of disabled.  (Statement of Issues 9) As with stooping, SSR 96–9p does not mandate a finding of disability but explicitly states that "it may be appropriate to consult a vocational resource" in this situation.

hour standing up and moving around at the console. (Tr. 83, 85–86)

The plaintiff first argues that the ALJ's hypothetical questioning was incomplete because it did not "properly include her complaints of pain, which include the need to elevate her leg." (Statement of Issues 9–10) However, as discussed in Part III.A, the ALJ properly discounted the plaintiff's subjective complaints and therefore was not required to find the plaintiff has a need to elevate her leg.

The plaintiff next argues that the ALJ accepted the functional limitations identified by Dr. Crotwell, including his requirement that the plaintiff receive "frequent rests." (Tr. 19) The plaintiff argues the ALJ did not properly interpret the term, "frequent rests," and so did not adequately account for this restriction in his hypothetical questioning. (Statement of Issues 9)

Dr. Crotwell did not define "frequent rests," so the issue is whether the ALJ reasonably construed the term and properly accounted for "frequent rests," as construed, in his hypothetical questioning. It is clear that he did so.

The ALJ treated "frequent" as hourly. (Tr. 86) This is plainly reasonable, because Dr. Crotwell opined the plaintiff can sit for an hour at a time, (Tr. 213), and therefore could not have believed the plaintiff needs more frequent rests. The plaintiff's proposed definitions of "frequent" are general, out of context and do not render the ALJ's interpretation unreasonable.

The ALJ treated the duration of "frequent rests" as five to ten minutes per rest period. (Tr. 86) This also is plainly reasonable, because Dr. Crotwell opined the plaintiff can sit eight hours in an eight-hour workday, (Tr. 213), and therefore could not have believed the plaintiff needs extended rest periods. The plaintiff offers no clear objection to the ALJ's interpretation.

Finally, the ALJ treated "rest" as standing and moving around at the plaintiff's work console. (Tr. 86) This as well is reasonable, because Dr. Crotwell opined the plaintiff can stand and walk an hour each in an eight-hour workday and did not identify any special rest needs. (Tr. 213) The plaintiff does not challenge the reasonableness of such a construction but suggests the ALJ in fact accepted a different definition of "rest" as doing whatever the plaintiff felt she needed to make herself comfortable, other than taking a bath. While the ALJ used this language in a hypothetical, (Tr. 86), he clearly did not accept it as fact. The vocational expert indicated the plaintiff could not perform the jobs of radio dispatcher and surveillance system monitor if she needed freedom to do whatever necessary to make herself comfortable, (Tr. 86); since the ALJ found the plaintiff can perform these jobs, he implicitly but necessarily rejected this definition of "rest."

In summary, the ALJ's hypothetical questioning properly included all functional limitations that he found to exist, and he was not required to find the existence of any additional functional limitations.

## IV. Conclusion.

For the reasons set forth, it is recommended that the decision of the Commissioner denying the plaintiff's claim be **affirmed.**

The attached sheet contains important information regarding objections to this **report and recommendation.**

### MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. *Objection.* Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of

the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith,* 855 F.2d 736, 738 (11th Cir.1988); *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (Applicable Where Proceedings Tape Recorded).* Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Jan. 25, 2000.